**IN THE UNITED STATES DISTRICT COURT FOR THE**

**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **MOHAMMAD NASRAT HANIFI,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-26-1229-D** |
| | ) | |
| **FRED FIGUEROA, et al.,** | ) | |
| | ) | |
| **Respondents.** | ) | |

**REPORT AND RECOMMENDATION**

Petitioner Mohammad Nasrat Hanifi, an Afghan citizen proceeding *pro se*, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 ("Petition") challenging his detention by the U.S. Immigration and Customs Enforcement ("ICE").[1] (Doc. 1).[2] United States District Judge Timothy D. DeGiusti referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B)-(C). (Doc. 3). In accordance with the expedited briefing schedule, (Doc. 5), Respondents timely filed a Response to the Petition. (Doc. 8). Petitioner timely filed a reply. (Doc. 10). Petitioner also filed a supplement on July 27, 2026, containing documents he received on July 22, 2026. (Doc. 11). For the reasons set forth below, the undersigned recommends that Petitioner be **GRANTED** habeas relief and **released from custody immediately.**

---

[1] Petitioner is housed at Diamondback Correctional Facility in Watonga, Oklahoma. (Doc. 1, at 2).

[2] Citations to the parties' filings and attached exhibits will refer to this Court's CM/ECF pagination.

## I. Factual Background and Procedural History

Petitioner is a citizen of Afghanistan who entered the United States without inspection on January 9, 2025. (Doc. 8, at Ex. 1). Petitioner was detained by ICE that day and has remained in detention since then. (*Id*. at Ex. 3, at 2). Prior to the issuance of a Notice to Appear, an asylum officer found that Petitioner had demonstrated a credible fear of persecution. (*Id*. at Ex. 1, at 1). The Notice to Appear was issued on February 10, 2025, initiating removal proceedings. (*Id*.) On May 5, 2025, Petitioner filed an Application for Asylum and for Withholding of Removal. (Doc. 8, at 2).

Petitioner told ICE that he had refugee status in Greece, (*id*. at Ex. 3, at 3), but he lost his documents, including his Greece Residency Card, in the Panama jungle. (Doc. 10, at 1). Petitioner lived in Greece for three years, and his status in Greece was set to expire in 2026. (Doc. 8, at Ex. 6, at 4). Petitioner does not know whether his status in Greece will be renewed. (*Id.*)

On July 29, 2025, an immigration judge denied Petitioner's asylum claim, denied withholding and deferral of removal under the Convention Against Torture ("CAT"), but granted withholding of removal to Afghanistan under INA § 241(b)(3) (*i.e*., 8 U.S.C. § 1231(b)(3)). (Doc. 8, at Ex. 5, at 1). Thus, the immigration judge ordered Petitioner removed to Afghanistan, or, in the alternative, removed to Greece as a country in which he was "firmly resettled." (*Id.* at 3). ICE takes the position that, on August 28, 2025, Petitioner's "removal order became final due to not filing a timely appeal with the Board of Immigration Appeals." (Doc. 11, at Ex. 1, at 2). ICE states that on October 29, 2025, it began attempting to remove Petitioner to a third country. (Doc. 8, at Ex. 3, at 3). ICE

states "[t]hat effort remains ongoing and is pending," but has provided no further updates of any progress. (*Id.*)

On December 5, 2025, Petitioner filed an appeal with the Board of Immigration Appeals ("BIA"). (Doc. 11, at Ex. 1, at 2). On March 13, 2026, the BIA dismissed Petitioner's appeal on the merits. (Doc. 8, at Ex. 6, at 2). The BIA agreed with the immigration judge that that Petitioner had been firmly resettled in Greece, and therefore, was ineligible for asylum. (*Id.* at 6).

Petitioner asserts that he has not been asked to file a travel document form, that Respondents have not found a third country to send him to, that Respondents have not asked Greece to accept him, that Greece has not agreed to accept him, and that institutional barriers prevent his removal. (Doc. 1, at 13-14). Petitioner states that he cooperated with Respondents in effectuating his removal by handing over what documents he did have and telling them how he lost his documents at his ICE interview on April 4, 2026. (Doc. 1, at Ex. 8, at 2; Doc. 10, at 1).

Petitioner filed the instant Petition on May 19, 2026, (Doc. 1, at 9), when he had been in immigration detention for 495 days, or more than 16 months, since his January 9, 2025, encounter with ICE. As of the date of this Report and Recommendation, Petitioner has been in immigration detention for 19 months and 26 days, and he remains detained at the Diamondback Correctional Facility. *See* ICE Online Detainee Locator System https://locator.ice.gov/odls/#/results (last accessed Sept. 4, 2026).

Respondents allege the following facts related to removal efforts:

> in Fiscal Year (FY) 24, ICE accomplished 114 total removals of Afghanistan citizens to third countries; in FY 25, ICE accomplished 554 total removals of Afghanistan citizens to third countries; and as of June 15 of FY 26, ICE has accomplished 273 total removals of Afghanistan citizens to third countries.

(Doc. 8, at Ex. 3, at 3-4). Respondents also allege that Petitioner "failed to cooperate with ICE ERO and provide information in order to effectuate his removal to Greece." (*Id.*)

## II. Petitioner's Claims and Respondents' Responses

Petitioner raises five grounds for relief:

(1) Violation of due process under *Zadvydas v. Davis* because there is no significant likelihood of Petitioner's removal to Afghanistan or any other country in the reasonably foreseeable future. (Doc. 1, at 7, 14).

(2) Respondent's removal policy "violates Constitutional and Statutory requirements." (*Id.* at 14).

(3) Violation of due process because Respondents have failed to remove Petitioner in a reasonable time. (*Id.*)

(4) Continued detention beyond a reasonable time is arbitrary when Petitioner has withholding of removal. (*Id.*)

(5) Violation of United States treaty obligations. (*Id.*)

Petitioner asks the Court to:

- order his immediate release; and
- enjoin Respondents from re-detaining him without notice and an opportunity to be heard.

(*Id*. at 8).

In opposition, Respondents argue that (1) Petitioner's detention is within the presumptively reasonable period under *Zadvydas*, (Doc. 8, at 7); (2) Petitioner did not meet his burden to show there is no significant likelihood of removal in the reasonably

foreseeable future, (*id.* at 8); (3) if Petitioner's burden were met, Respondents have rebutted it, (*id.* at 10); and (4) Petitioner's failure to establish a *Zadvydas* claim precludes success on his due process claim. (*Id.* at 11).

## III. Standard of Review

To obtain habeas corpus relief, Petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[T]he primary federal habeas corpus statute, 28 U.S.C. § 2241, confers jurisdiction upon the federal courts to hear . . . challenges to the lawfulness of immigration-related detention." *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) ("Challenges to immigration detention are properly brought directly through habeas.").

## IV. Legal Framework for the Detention or Release of Aliens Subject to a Final Order of Removal

When a non-citizen has been ordered removed from the country, 8 U.S.C. § 1231(a) provides a 90-day period for the government to accomplish removal, during which detention is mandatory. This is known as the "removal period," and it begins at the latest of (1) "[t]he date the order of removal becomes administratively final," (2) "the date of the court's final order" when a removal order is judicially reviewed, or (3) "the date the alien is released from detention or confinement" if the alien is detained according to a non-immigration process (e.g., imprisonment for a crime). *Id.*; *see Zadvydas*, 533 U.S. at 682 ("When an alien has been found to be unlawfully present in the United States and a final order of removal has been entered, the Government ordinarily secures the alien's removal

during a subsequent 90–day statutory 'removal period,' during which time the alien normally is held in custody.").

A removal order typically becomes administratively final "upon the earlier of": "a determination by the [BIA] affirming such order" or "the expiration of the period in which the alien is permitted to seek review of such order by the [BIA]." 8 U.S.C. § 1101(a)(47)(B). Thus, Petitioner's removal period began on August 28, 2025, when his "removal order became final due to not filing a timely appeal with the [BIA]," (Doc. 11, at Ex. 1, at 2), and it ended ninety days later.[3]

"If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall [ordinarily] be subject to supervision." 8 U.S.C. § 1231(a)(3). However, the Government retains discretionary authority to detain some aliens "beyond the removal period." § 1231(a)(6); *see Zadvydas*, 533 U.S. at 682 ("A special statute authorizes further detention if the Government fails to remove the alien during those 90 days.") (citing § 1231(a)(6)). Section 1231(a)(6) does not specify how long relevant aliens may be detained beyond the removal period. However, the Supreme Court in *Zadvydas v. Davis* held that "[a] statute permitting indefinite detention of an alien would raise a serious

---

[3] Contrary to ICE's position in the Decision to Continue Detention on July 16, 2026, (Doc. 11, at Ex. 1, at 2), Respondents state in their Response that the order of removal became administratively final on March 13, 2026, "the date on which the BIA dismissed Petitioner's appeal." (Doc. 8, at 7). However, an order of removal becomes administratively final upon the *earlier* of a determination by the BIA *or* the expiration of the time to appeal to the BIA. 8 U.S.C. § 1101(a)(47)(B). Thus, as ICE's own records reflect, Petitioner's order of removal became final on August 28, 2025, the day his time to appeal to the BIA expired. 8 CFR § 1003.38(b)(2) (appeals from immigration judge's adjudication of asylum claim shall be filed within 30 days of the decision). Accordingly, Respondent's argument that Petitioner's *Zadvydas* claim is premature has no merit.

constitutional problem" because it would directly implicate the Fifth Amendment's Due Process Clause. *Id.* at 690. The Court consequently held that § 1231(a)(6), "read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention." *Id.* at 689. The Court further specified that detention is presumptively reasonable for only six months. *Id*. at 701. *See also Morales-Fernandez v. INS*, 418 F.3d 1116, 1123 (10th Cir. 2005) (reiterating "the reasonable period of post-removal detention is presumptively six months"). "After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Zadvydas,* 533 U.S. at 701.

## V. Petitioner Is Entitled to Habeas Relief Because His Continued Detention Violates *Zadvydas*.

### A. Petitioner Has Met His Initial Burden.

To obtain habeas relief, a petitioner has the initial burden (1) to show his post-removal-order detention has surpassed six months or to rebut the presumption of reasonableness if such detention is less than six months, and (2) to "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," *Zadvydas*, 533 U.S. at 701; *see also Soberanes*, 388 F.3d at 1311 ("If removal is not reasonably foreseeable, the court should hold continued detention unreasonable.") (citation modified). If the petitioner meets his initial burden, "the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701.

Petitioner's relevant detention has surpassed six months. Petitioner has been in post-removal detention since August 28, 2025. Petitioner filed this Petition on May 19, 2026. Thus, Petitioner had been in post-removal detention for nearly nine months at the time it was filed. Petitioner has now been in post-removal detention for over twelve months.

Petitioner has likewise provided good reason to believe that his removal is not significantly likely in the reasonably foreseeable future. Notably, Petitioner is not required under *Zadvydas* to "show the absence of *any* prospect of removal—no matter how unlikely or unforeseeable," 533 U.S. at 702, only that that he has "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," *id.* at 701. "To meet the burden of establishing this, Petitioner must demonstrate the existence of either institutional barriers to repatriation or obstacles particular to his removal." *Dusabe v. Jones*, No. CIV-24-464-SLP, 2024 WL 5465749, at *3 (W.D. Okla. Aug. 27, 2024), *report and recommendation adopted*, 2025 WL 486679 (W.D. Okla. Feb. 13, 2025).

Petitioner cannot be removed to Afghanistan because an immigration judge granted him withholding of removal to Afghanistan under 8 U.S.C. § 1231(b)(3). "Courts routinely find that non-citizens under such circumstances have met their initial burden under *Zadvydas*." *Elshourbagy v. Bondi*, 817 F. Supp. 3d 1102, 1109 (W.D. Wash. 2025) (collecting cases); *see also Nadarajah v. Gonzales*, 443 F.3d 1069, 1081 (9th Cir. 2006) (noting that a grant of withholding of removal under CAT "is a powerful indication of the improbability of his foreseeable removal, by any objective measure").

Further, Petitioner identifies several obstacles to his removal to Greece. Petitioner lost his Greece Residency Card, (Doc. 10, at 1), and he states that Respondents have not asked him to file a travel document form. (Doc. 1, at 13). Petitioner states that Greece has neither agreed to accept him nor been asked to accept him. (*Id.* at 14). Petitioner points out that, twelve months into his post-removal detention, ICE still "does not show clear evidence of progress to deport Petitioner to a third Country so far." (Doc. 10, at 2).

These allegations are sufficient for Petitioner to meet his initial burden under *Zadvydas*. *See Khaliq v. Noem*, 828 F. Supp. 3d 1260, 1269 (W.D. Okla. 2026) (Petitioner met burden when "ICE claim[ed] it [was] going to pursue travel documents to Palestine, [but] no communications with that country [had] yet been initiated"); *Vishal v. Chestnut*, 811 F. Supp. 3d 1179, 1184 (E.D. Cal. 2025) (Petitioner met burden when he alleged that respondents "failed to provide notice of any progress that has been made over the past seven months to effectuate [Petitioner's] removal following his award of withholding of removal"); *Gomez v. Mattos*, No. 25-CV-00975-GMN-BNW, 2025 WL 3101994, at *5 (D. Nev. Nov. 6, 2025) (finding petitioner met his initial burden because he "has identified a barrier preventing him from being repatriated to [his home country], has demonstrated that he is not a citizen of any other country, and that ICE has not identified a third country that will accept him"); *Trejo v. Warden of ERO El Paso E. Mont.*, No. EP-25-CV-401-KC, 2025 WL 2992187, at *5 (W.D. Tex. Oct. 24, 2025) (finding petitioner met his burden by demonstrating "that he is not a citizen of any other country, and that ICE has not identified a third country that will accept him").

Respondents state that "Petitioner offers very little beyond conclusory statements in support of his argument." (Doc. 8, at 8). But it is not the Petitioner's fault if there are no ICE activities or documents to reference or file because ICE has not made any meaningful progress. Petitioner states that ICE has not made significant progress, and Respondents do not rebut this with any assertions or evidence of what ICE has done. When the Supervisory Detention and Deportation Officer on the case cannot identify any specific actions ICE has taken on the case, (Doc. 8, at Ex. 3), then Petitioner's allegations of no progress stand on their own.

This District has often granted habeas relief under *Zadvydas* even when the government had done more to effectuate removal. *Nfumu v. Grant*, Case No. CIV-25-1574-J, 2026 WL 637618, at *2 (W.D. Okla. March 6, 2026) (granting relief when ICE had contacted Ghana); *Ahmadi v. Diamondback Corr. Facility*, Case No. CIV-26-1276-R, 2026 WL 2204432, at *5 (W.D. Okla. July 16, 2026), *report and recommendation adopted by* 2026 WL 2209207 (July 30, 2026) (granting relief when ICE had requested a transportation letter from Afghanistan); *Khaliq*, 828 F. Supp. 3d at 1269 (granting relief when ICE had received a response from the Jordanian Embassy). The Court should not decide to withhold relief because the government has done less.

Petitioner has been detained in the post-removal period for twelve months without any apparent progress. On these facts, Petitioner has met his initial burden (1) to show his post-removal-order detention has surpassed six months, and (2) to "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future."

**B. Respondents Have Not Met Their Burden.**

Having concluded Petitioner established "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. Respondents have not met their burden.

As an initial matter, Respondents do not even allege any particular facts that would cause Petitioner's removal to be significantly likely in the reasonably foreseeable future. (*See* Doc. 8, at Ex. 3, at 3-4). Rather, they provide statistics about how many Afghanistani citizens have been removed in 2024, 2025, and through June 15, 2026. (*Id.*) This information is insufficient to rebut Petitioner's showing because such figures do not "provide[] . . . evidence of progress . . . made towards removal of Petitioner himself." *Pham v. Bondi*, No. CIV-25-1157-SLP, 2025 WL 3243870, at *2 (W.D. Okla. Nov. 20, 2025). *See also Cao*, 2026 WL 637617, at *5 ("[A] general indication that removals to Vietnam were likely because removals were occurring more frequently in 2025 than in recent years . . . does not satisfy the . . . determination of a significant likelihood that *the* alien may be removed.") (internal quotation marks omitted).

Respondents also declare that Petitioner "failed to cooperate with ICE ERO and provide information in order to effectuate his removal to Greece." (Doc. 8, at Ex. 3, at 3). But Respondents do not say what Petitioner failed to do. (*Id.*) Respondents have not provided a date on which any request for information was made, nor have Respondents identified what information was requested. (*Id.*) In contrast, Petitioner describes how he told Respondents that he lost his Greece Residency Card and his phone in the Panama

jungle. (Doc. 10, at 1). Petitioner also provides his interview with ICE where he told ICE he handed over everything he had and had lost everything else. (Doc. 1, at Ex. 8, at 2).

Respondents' statement that "[s]ince October 29, 2025, ICE ERO has been actively working with the ICE ERO Removal and International Operations Division to effectuate Hanifi's removal to a third country" is vague and likewise has not progressed. (Doc. 8, at Ex. 3, at 3). These facts are wholly insufficient to rebut Petitioner's showing that there is good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future. *See Thabata v. Blanche*, No. CIV-26-531-J, 2026 WL 1495209, at *2 (W.D. Okla. May 28, 2026) ("Such prolonged silence [of almost six months since a travel document request was made] reinforces that removal is not significantly likely in the reasonably foreseeable future.").

Thus, the undersigned concludes that Respondents have failed to rebut Petitioner's *Zadvydas* claim, and habeas relief is warranted in the form of immediate release from custody. *See e.g., Babakhani v. Gantt*, No. CIV-26-705-SLP, 2026 WL 1822995, at *5 (W.D. Okla. June 24, 2026); *Bui v. Bondi*, No. CIV-26-91-J, 2026 WL 788947, at *6 (W.D. Okla. Mar. 20, 2026); *Gholestani v. United States Dist. Ct.*, No. CIV-25-1392-R, 2026 WL 596649, at *2 (W.D. Okla. Mar. 3, 2026).

**VI. The Court Should Decline to Address Petitioner's Remaining Claims.**

Because the undersigned recommends that the Court grant the Petition under *Zadvydas*, the Court should decline to address his remaining claims as to how his detention is unlawful. *See Ye v. Bondi*, No. CIV-25-1230-D, 2025 WL 3485420, at *2 n.2 (W.D. Okla. Dec. 4, 2025) (acknowledging the Magistrate Judge did not consider petitioner's

remaining arguments for habeas relief after recommending habeas relief on one claim); *Hamidi v. Bondi*, No. CIV-25-1205-G, 2025 WL 3452454, at *2 n.2 (W.D. Okla. Dec. 1, 2025) (same).

Furthermore, the undersigned recommends that the Court find Petitioner's claim for injunctive relief not ripe for adjudication – his request for an order restraining Respondents from re-detaining him unless certain procedural conditions are met. (Doc. 1, at 8). The Tenth Circuit has explained that

> [t]he ripeness doctrine involves both constitutional requirements and prudential concerns. The purpose of the ripeness doctrine is to prevent the premature adjudication of abstract claims. Constitutional ripeness is based on Article III's requirement that federal courts hear only "cases" and "controversies." Because federal courts cannot give advisory opinions, the matter must come to the court in "clean-cut concrete form."
>
> Even when [a matter] satisfies Article III's "case or controversy" requirement, [a court] may still decline to review it under the prudential ripeness doctrine. Application of this doctrine turns on two factors: (1) the fitness of the issue for judicial review, and (2) the hardship to the parties from withholding review. As for whether the issue is fit for judicial review, we focus on whether the determination of the merits turns upon strictly legal issues or requires facts that may not yet be sufficiently developed. Thus, "[a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998).

*United States v. Cabral*, 926 F.3d 687, 693 (10th Cir. 2019) (citation modified). *See also Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807–08 (2003) ("Ripeness is a justiciability doctrine designed "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging

parties."). Petitioner's concerns about how his future re-detention or removal may occur "rest[] upon contingent future events that may not occur as anticipated, or indeed may not occur at all," *Texas*, 523 U.S.at 300, and granting any relief to him would require the Court to give an advisory opinion. The Court should decline to do so.

**VII. Recommended Ruling and Notice of Right to Object**

For the reasons discussed above, the undersigned recommends that the Court find Petitioner is currently detained in violation of *Zadvydas* and **GRANT** the Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241, (Doc. 1), to the extent it requests habeas relief under 28 U.S.C. § 2241. The undersigned recommends that the Court order Respondents **to release Petitioner from custody immediately**, subject to an appropriate OOS. *See Zadvydas*, 533 U.S. at 696 ("The choice, however, is not between imprisonment and the alien 'living at large.' It is between imprisonment and supervision under release conditions that may not be violated."). The undersigned further recommends that the Court order Respondents to certify compliance by filing a status report within three business days of the Court's order. Finally, the Court should **DENY** Petitioner's Motion to Expedite, (Doc. 12), as **moot**.

**The undersigned advises the parties of their right to object to this Report and Recommendation by September 11, 2026**, under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).[4] Failure to make timely objection to this Report and Recommendation waives

[4] Given the expedited nature of these proceedings, the undersigned has reduced the typical objection time to this Report and Recommendation. *See* Fed. R. Civ. P. 72(b)(2) advisory committee's note to 1983 addition (noting that rule establishing 14-day response time "does not extend to habeas corpus petitions, which are covered by the specific rules relating to

the right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues and terminates the referral to the undersigned Magistrate Judge in the captioned matter.

**ENTERED** this 4th day of September, 2026.

Amanda L. Maxfield
AMANDA L. MAXFIELD
UNITED STATES MAGISTRATE JUDGE

---

proceedings under Sections 2254 and 2255 of Title 28."); *see also Whitmore v. Parker,* 484 F. App'x 227, 231, 231 n.2 (10th Cir. 2012) (noting that "[t]he Rules Governing § 2254 Cases may be applied discretionarily to habeas petitions under § 2241" and that "while the Federal Rules of Civil Procedure may be applied in habeas proceedings, they need not be in every instance – particularly where strict application would undermine the habeas review process"). Additionally, Petitioner's Motion to Expedite, (Doc. 12), is now moot.